U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 1 8 2005

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| THOMAS L. SONNIER | CIVIL ACTION NO. 04-1382 |
| VS. | JUDGE MELANÇON |
| JO ANNE BARNHART, Commissioner Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

### *Background*

Born on July 7, 1952, Thomas Sonnier ("Sonnier") is a 53 year-old claimant with a sixth grade education. Sonnier worked in the past as a farm worker. On March 13, 2002, Sonnier applied for disability insurance benefits and supplemental security income, alleging disability due to mental problems and difficulty following instructions.[1] Sonnier's application was denied on initial review, and an administrative hearing was held on September 10, 2003.[2] In an opinion dated January 29, 2004, the ALJ determined that Sonnier is not disabled because he is be able to return to his past work or alternatively there are other jobs that exist in significant numbers that Sonnier could perform.[3] The Appeals Council denied review and Sonnier timely filed this appeal.

---

[1] Tr. 65-67; 102, 177-179. Sonnier had received benefits until March 1, 2000, at which time the benefits were ceased due to income. *See* Tr. 12.

[2] Tr. 181-216.

[3] Tr. 12-20.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The procedure can be summarized as follows:

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004),[4] citing 20 C.F.R. §404.1520a(b)(1).

2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(b)(2). To perform this latter step, the ALJ should assess the claimant's degree of functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3). If the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Serrano-Diaz v.

---

[4] The undersigned was unable to find any Fifth Circuit cases setting forth the proper procedure for analyzing mental disability claims since the revisions and amendments to 20 C.F.R. §404.1520a in 2000. The revisions and amendments became effective on September 20, 2000. 65 Fed. Reg. 50,746 (August 21, 2000). See Boyd v. Apfel, 239 F.3d 698, 705 n.11 (5th Cir. 2001). The Serrano-Diaz decision is therefore cited as the most succinct summary of the current law that the undersigned was able to find during research for this report and recommendation.

Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(2) (2002).

4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(3) (2002).

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1). In the Fifth Circuit, courts adhere to the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985) in assessing the severity of an impairment. In Stone, the Fifth Circuit declared that severity of an impairment must always be determined with regard to an individual's *ability to perform substantial gainful employment,* and cannot be based on medical severity alone. Moreover, the Fifth Circuit articulated the correct severity standard as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

Stone, 752 F.2d at 1101. The court further stated that "[W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless

the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." Id. at 1106.

In the instant case, the ALJ determined that Sonnier has the following severe impairments: depressive disorder, cocaine dependency, and polysubstance dependency, with the substance abuse problems being in remission.[5] The ALJ assessed Sonnier's residual functional capacity ("RFC") and concluded that Sonnier could perform all exertional levels of work that is simple and routine. In so finding, the ALJ concluded that Sonnier would be able to perform his past work as farm helper. The ALJ also applied the Medical Vocational Guidelines, and concluded that Sonnier was not disabled because additional jobs existed that he could perform.

### *Assignment of Errors*

Sonnier alleges that, "The Administrative Law Judge was in error in his conclusion that Mr. Sonnier's non-exertional limitations did not compromise his ability to work at all exertional levels, resulting in the conclusion that Mr. Sonnier could consistently perform the heavy work of a farm laborer. The Judge misused the guidelines of Section 204 of the Medical-Vocational Guidelines in this analysis."[6]

---

[5] Tr. 17.

[6] Rec. Doc. 13.

## *Findings and Conclusion*

1.  **Medical History**

On March 20, 2000, Sonnier was admitted to the Behavioral Medicine Center at Abbeville General Hospital due to depression and crack cocaine abuse.[7] Sonnier was discharged on March 29, 2000 with a diagnosis of depressive disorder, NOS, cocaine dependency polysubstance dependency, borderline intellectual functioning, and mild mental retardation.[8] He prescribed Paxil and Trazadone for depression and was referred into aftercare at the Willow's Halfway House so he could participate in a structured living environment and core psychiatric programming on an outpatient basis.[9] The record does not contain information concerning Sonnier's stay at the Willow's Halfway House.

On June 26, 2000, Sonnier was referred to Crowley Mental Health for follow-up treatment from the Willow's Halfway House.[10] A letter from Diane Gonzales, M.D., psychiatrist and Janet Williams, Registered Nurse, summarizes Sonnier's treatment with Crowley Mental Health Center from June, 2000 to April 25, 2002 as follows:[11] On June 26, 2000, Dr. Ching Shih Hu, a psychiatrist, diagnosed Sonnier with Major Depressive Disorder, Recurrent, Moderate, and cocaine dependence. Sonnier was described as having a depressed mood, poor sleep, anger problems and irritability.[12] Sonnier was placed in individual therapy and his

---

[7] Tr. 136-137.

[8] Tr. 145.

[9] Tr. 143-144.

[10] Tr. 146.

[11] Tr. 146. There are no treatment notes covering this time period.

[12] Tr. 146.

symptoms improved.[13] Sonnier maintained abstinence from substance abuse and he was placed in group therapy. He was prescribed Celexa for depression.

On May 7, 2002, Sonnier was examined at Crowley Mental Health Center by Helmut Labrentz, Ph.D., a clinical psychologist.[14] Sonnier denied suicidal ideations and hallucinations. The Minnesota Multiphasic Personality Inventory was administered and showed significant elevations on scales measuring acting out potential, depression, anxiety, and psychomotor energy. Dr. Labrentz found that Sonnier would benefit from "reality therapy" which assists the individual in making better choices in order to avoid the negative consequences of his behavior. Dr. Labrentz stated, "Some of the negative consequences in Thomas' case are feelings of depression and anxiety when he has engaged in inappropriate behavior. At the present time, his level of depression and anxiety are not exceedingly high, but when he acts out these problems are likely to recur."[15] Dr. Labrentz recommended that Sonnier attend Alcoholic Anonymous and/or Narcotics Anonymous meetings. Dr. Labrentz's subjective observations of Sonnier indicated that he may be functioning intellectually at the low end of the average range, and therefore, Sonnier intellectual functioning testing was scheduled.

On May 14, 2002, Dr. Labrentz administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III).[16] Sonnier's scores were: verbal IQ of 72, performance IQ of 83, and full scale IQ of 75. Dr. Labrentz concluded:

---

[13] Tr. 146.

[14] Tr. 147-150.

[15] Tr. 149.

[16] Tr. 151-152.

These test results indicate that Thomas' intellectual skills, while measured as being in the borderline range, show some indications of at least low average potential. He seems more proficient in nonverbal areas, and there is at least one specific skill area in which he demonstrated above-average ability, namely, distinguishing relevant from irrelevant data. His level of literacy is judged to be marginal. He probably was reasonable well-suited to the diesel mechanics and welding training that he received, as well as being a farmhand. From a psychological standpoint, he should be encouraged to get back into the job market that he previously held.[17]

DDS conducted a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment on June 13, 2002.[18] The non-examining consultant found Sonnier to have mild limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence and pace.[19] There was no evidence of episodes of deompensation.

## 2. **Administrative Hearing**

At the administrative hearing, Sonnier's sister testified that Sonnier received Social Security benefits from childhood to 2000, when his benefits were stopped because he was earning too much income.[20] Sonnier did not work from 2000 to 2002, but in 2002 he began working as a farmhand again. Sonnier drives the tractors, works the backhoe, and drives the farm trucks. Sonnier does not work consistently because of weather, and he does not get paid when he does not work. During winter months, Sonnier works on a crawfish form, working from 7 a.m. until 8 p.m. earning $40.00 per day.[21] The farmer who Sonnier works for picks him up for

---

[17] Tr. 152.

[18] Tr. 154-171.

[19] Tr. 168.

[20] Tr. 194-195.

[21] Tr. 191.

work every morning. Sonnier testified that he has difficulty getting along with people he works for because they think they know everything.[22] Sonnier's sister manages his money and pays his bills.

Thomas Stigall, Ph.D., a clinical psychologist, was called as a medical expert at the hearing. Dr. Stigall testified as follows:

> \* \* \* So, I looked first at the 12.09 substance abuse listing and then rated that under listing 12.04 which I thought was the most appropriate and applicable of the categories and, under 12.04, I did not find information that would support the principal listing there, although I did think that there was sufficient evidence for the category that says a medically determinable impairment is present. It does not precisely satisfy the diagnostic criteria above and so I think there are depressive symptoms. They chiefly manifest themselves in terms of liability of mood, in terms of impulsivity, a some aggressiveness, some disruptive behavior, troublesome behavior.
>
> \* \* \*
>
> Well, considering both 12.09 and 12.04, I rated activities of daily living mild, noting that he's employed as a farm laborer. He does not have a driver's license. I'm not sure he ever has had a driver's license but he is - -
>
> \* \* \*
>
> He is functioning, in terms of his ability to go to work and to work regularly if the weather permits. With respect to social functioning, I rated that a moderate degree of limitation, noting the episodes of belligerent conduct that have been reported and confirmed by the Claimant's testimony today. With respect to difficulties in maintaining concentration, persistence or pace, I rated that a mild limitation, noting the borderline to low average intellect. I'm not sure about the repeated episodes of decompensation. We found in the record only the one episode where he was treated at the Behavioral Medicine Unit, although – and then the halfway house – although he continues to be seen at the Mental Health Center but the condition appears to be relatively chronic and relatively stable.[23]

---

[22] Tr. 197-198.

[23] Tr. 208-210.

A vocational expert, Lester Soileau, testified regarding whether Sonnier's impairments affect his ability to obtain employment:

> Q. Mr. Soileau, you've heard the testimony. If you assume that the testimony is correct insofar as the observations made by the doctor as to irritability and flashes of anger, would that make it difficult for a person to work on a regular basis or to hold a job?
>
> A. You know, I think there's a history of having some problems with the employer and certainly that's, you know, behaviorally, that's one of the no-no's and when you work with somebody, you do what they say and you don't argue and fight with them. This may be one of the better jobs for that kind of problem because they're working alone most of the time on their tractor away from everybody else. People contact is early in the morning, late in the afternoon, when the owner of the far or the employer is around, but certainly any behavioral kind of thing can always interfere with employment.[24]

3. **Listing 12.04**

Sonnier maintains that the ALJ erred in finding that he does not meet the requirements of either Listing 12.04. Listing 12.04 states:

> **12.04 Affective Disorders:** Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > 1. Depressive syndrome characterized by at least four of the following:
> >    a. Anhedonia or pervasive loss of interest in almost all activities; or
> >    b. Appetite disturbance with change in weight; or
> >    c. Sleep disturbance; or
> >    d. Psychomotor agitation or retardation; or
> >    e. Decreased energy; or
> >    f. Feelings of guilt or worthlessness; or

---

[24] Tr. 213-214.

   g. Difficulty concentrating or thinking; or
   h. Thoughts of suicide; or
   i. Hallucinations, delusions or paranoid thinking; or

  2. Manic syndrome characterized by at least three of the following:
   a. Hyperactivity; or
   b. Pressure of speech; or
   c. Flight of ideas; or
   d. Inflated self-esteem; or
   e. Decreased need for sleep; or
   f. Easy distractibility; or
   g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
   h. Hallucinations, delusions or paranoid thinking;

Or

  3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:
  1. Marked restriction of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or
  4. Repeated episodes of decompensation, each of extended duration.

20 CFR Pt. 404, Subpt. P, App. 1.[25]

---

[25] Listing 12.04 (C) states:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Sonnier argues that since Dr. Stigall found that Sonnier had a "medically determinable impairment," that moderately limited his ability to function, he satisfies the requirements for 12.04.

The ALJ concluded that Sonnier's impairments satisfied Part A of 12.04. It is clear, however, that he does not satisfy Part B, which requires medical evidence of marked restrictions in at least two of the following categories: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. There is no medical evidence of record indicating that Sonnier has marked restrictions in any category. Although Sonnier relies on Dr. Stigall's testimony, it is clear that Dr. Stigall did not find Sonnier to have any marked restrictions, but rather only moderate restrictions in social functioning because of Sonnier's sometimes belligerent conduct. Consequently, Sonnier fails to satisfy Part B of the Listing. Thus, the undersigned concludes that Sonnier has not supported his claim that he meets the requirements of Listing 12.04.[26]

### 4. Sonnier's Past Work and the Medical-Vocational Guidelines

Sonnier maintains that the ALJ erred in finding that his mental impairments did not compromise his ability to work at all exertional levels. Sonnier argues that since he has irritability, flashes of anger, other problems with interrelationships with his employers, as well as low intellectual functioning, he cannot work.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate

---

[26] There is no evidence that Sonnier meets Part "C" of the listing.

issue of disability is reserved to the Commissioner. The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complains of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

After considering the evidence, the ALJ concluded:

> The claimant and his sister's assertions regarding the claimant's limitations are not entirely credible. The claimant asserts that he cannot get along with his employer but he rides to work with him on a daily basis and has worked for him for a significant period of time. If the claimant's behavior was as difficult as alleged, surely he would be fired by the farmer. The claimant's sister asserts that Mr. Sonnier has difficulty following directions but the claimant testified that he is able to change the seals in farm equipment, operate a tractor and backhoe, and paint the house. Though these are fairly routine and somewhat simple tasks, it requires maintaining concentration and following directions. There is no indication that the claimant cannot perform simple routine work. In fact, after extensive psychological testing, Dr. Labrentz of the Crowley Mental Health Clinic determined that the claimant should return to his work as a farm helper. Accordingly, the undersigned finds the claimant retains the following residual functional capacity: to perform simple routine work.

\* \* \*

> The claimant testified that he works from seven in the morning to eight in the evening, earns $40.00 a day, and works on a fairly regular basis. If his work were not fairly regular no doubt the farmer would fire him. In all likelihood the claimant was paid in cash and this income was not reported as his earning record does not reflect any earnings since 1983. The claimant reported in his psychosocial assessment in 2000 that he had worked for the same farmer for five years but these earnings are not reflected in the record. Thus, the record indicates that the claimant has sufficient non-reported earnings and has worked at this job

for a sufficient period of time to constitute past relevant work. As farm work is considered simple routine work, Mr. Sonnier is able to return to his past relevant work as a farm worker. Due to the fact that the claimant's earnings are not well documented, the undersigned will proceed to the fifth step of the sequential evaluation.

\* \* \*

The claimant has no physical impairment that would limit his exertional capacity. . . . In this case the claimant has demonstrated the capability of performing medium to heavy farm work.

The undersigned concludes that the claimant's ability to perform work at all exertional levels is not significantly compromised by his non-exertional limitations and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled. In addition, the undersigned finds that there are a significant number of jobs in the national economy that the claimant can perform given his age, education, past relevant work experience, and residual functional capacity.[27]

The court's function is to determine whether substantial evidence supports the ALJ's decision. As set forth above, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). Here, the medical evidence, including Dr. Labrentz's report indicating that Sonnier should re-enter the job market, supports the ALJ's determination. Likewise, Sonnier's testimony regarding his current employment status and his ability to operate farm equipment, and at one time run his own farm, supports the ALJ's determination that any problems Sonnier has with relating to employers and following directions do not pose significant limitations on his ability to work. Thus, the ALJ's determination that Sonnier could return to his past work as a farm helper is supported by the record.

---

[27] Tr. 17-18.

Furthermore, the ALJ's alternative basis for his non-disability finding is also proper. Because the ALJ's residual functional capacity assessment was proper, his reliance on the Medical-Vocational Guidelines in determining that Sonnier is not disabled was also proper. The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all of the strength demands required by work at the given level of exertion, and there are no non-exertional limitations which significantly erode the occupational base. SSR 83-10.[28] Here, because the ALJ determined that Sonnier can perform substantially all of the strength demands of medium to heavy work, and because the record supports his conclusion that he does not have any non-exertional limitations that significantly affect his abilities, his reliance on the Medical-Vocational Guidelines was proper.

Accordingly, because credible evidentiary choices exist which support the ALJ's decision, the undersigned concludes that substantial evidence supports the non-disabled finding.

### *Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and

---

[28] Social Security Rulings are issued by the Social Security Administration and are based on case decisions made at the administrative levels of adjudication, federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration, in accordance with Section 422.406(b)(1) of the Social Security Regulations No. 22 (20 CFR Part 422), and are to be relied upon as precedents in adjudicating other cases.

recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on _July 15, 2005_, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 7-18-05
BY CM
TO TLm